UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAKESHA LEE,<br><br>    Plaintiff,<br><br>v.<br><br>NEW YORK UNIVERSITY and NICHOLAS VAGELATOS,<br><br>    Defendants. | ECF/CM Case<br><br>**Case No. 19-CV-9491**<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION AND THE PARTIES

1. This is an action to redress unlawful employment practices under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("State Human Rights Law") N.Y. Exec. L. §290 *et seq.,* the New York City Human Rights Law ("City Human Rights Law") N.Y.C. Admin. Code §8-101 *et seq.,* and New York Common Law for Assault.

2. Plaintiff Lakesha Lee ("Lee" or "Plaintiff") is a former employee of New York University, a defendant in this action. Lee's position was within New York University's School of Law. The law school is an entity within New York University that essentially operates as an independent entity for accreditation of its

1

academic studies as required by the American Bar Association. Lee worked in the department that solicited donations to the law school.

3. Defendant New York University ("NYU" or "Defendant") is an educational institution licensed in the State of New York to confer post-high school academic certificates on the graduation of its students.

4. Defendant Nicholas Vagelatos ("Vagelatos") is an Assistant Dean of Development and Alumni Relations for NYU and Lee's former supervisor.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over Lee's claims pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because all causes of action accrued within New York County.

7. Lee has satisfied all necessary pre-suit administrative requirements in order to file suit in federal court.

## FACTUAL ALLEGATIONS

*Material Witness*

8. Jonathan Biondi ("Biondi") was the Operations Manager NYU and he had supervisory authority Lee's employment at all relevant times as alleged in this complaint.

9. Amy Wright-Parra ("Wright-Parra") was employed by NYU and she also had supervisory authority over Lee's employment at all relevant times as alleged in this complaint.

## Material Facts

10. On or about March 26, 2018 Lee was first interviewed for the position of Administrative Aide II with NYU Law's Development and Alumni Relations Dept. The person in this position is expected to perform the following duties:

- a wide range of clerical, secretarial and general office duties including those of a confidential nature;

- prioritize office activities and delegate work to both student and casual employees;

- respond to inquiries displaying a comprehensive knowledge of the departmental offerings and policies and act as NYU Law's fund raising contact/liaison as necessary;

- interact with University personnel including those at the senior level regarding specific issues and problems;

- customize and compose letters in response to requests for information;

- perform general word processing duties utilizing intermediate to advanced-level functions;

- modify or create databases and complex spreadsheets; and

- monitor complex departmental budgets and grants.

11. After a successful first interview, Lee was invited for a second interview that was to commence on or about May 1, 2018. There, she was interviewed by Christina Napolitano (Development and Campaign Manager), Michele Eddie (Director of Annual Giving), and Anthony Thomas (Senior Director). During this interview she was repeatedly questioned on her ability to work in a very strenuous environment and or her ability to work under stressful conditions.

12. During her second interview, Lee was warned that Vagelatos had trouble completing necessary task in a timely matter; that Vagelatos had a six-month backlog of tasks yet to be completed and that it would require her to formulate a system to better track what Vagelatos was actually doing and what needed to be done. She was warned that Vagelatos specifically needed help in "staying on task."

13. To further give her an understanding of what was expected, the second interview team informed her that every week there was a team meeting with the head dean, Trevor Morrison, and other deans. From this meeting a task list would be created for Vagelatos to complete and that, as stated above, he had not completed nearly six months of assigned task. It was further explained that with the Senior Project Manager, Brittany Snyder -who was expected to commence her employment two-weeks following Lee's unofficial expected start date in the early

part of May 2018- Lee and Snyder were expected to go through Vagelatos' uncompleted tasks and prioritize those that needed immediate attention and to formulate a plan for completion of all tasks.

14. On or about May 7, 2018, Lee received and accepted the job offer from NYU as a senior administrative aide to Vagelatos. Although Lee's corporate title was Administrative Aide II, the position was more aligned to that of an Executive Assistant, a more senior position.

15. On or about the first day of her orientation with Kiley Malone, Lee became keenly aware of the dysfunction of the Development and Alumni Relations department under Vagelatos' leadership. The atmosphere in the department was akin to a Wall Street *penny stock boiler-room*; meaning, the vulgar language and the remarks about donors that would be disparaging if made in their presence. Lee found this atmosphere to be an embarrassment and an afront to the teachings of her religion -charity and respect for others- and not what she expected from a place that advertises itself as preeminent learning institution. There, she also witnessed that this was a place where donors could tip the scales of opportunity in their favor with an adequate donation and with the assistance of Vagelatos.

16. From the beginning of her employment, Lee took her lunch break at 2:00 p.m., for religious reasons. Specifically, Lee would often fast for religious reasons and she would break her fast at 2:00 p.m. Lee also prayed at 2:00 p.m.

because the main church for Lee's religion is in Nigeria and they pray at 7:00 p.m., which is 2:00 p.m. eastern standard time. Before taking her lunch break, Lee would inform Vagelatos -if he was present- or in his absence, another member of the senior staff.

17. On or around June 22, 2018, Vagelatos and Biondi held a meeting with Lee. There, Vagelatos and Biondi singled out and reprimanded Lee her for benign issues with her work and they expressed unreasonable expectations given the briefness of her tenure and otherwise nit-picked at her work product.

18. At the conclusion of the meeting mentioned above, at around 2:00 p.m., Lee said that she was going to go to her lunch break. Vagelatos responded that Lee could have taken her lunch already. Lee explained that she has been taking lunch break at 2:00 pm. for religious and personal reasons. Vagelatos then informed Lee that there is a Human Resources policy which states that a break for lunch must be taken between the hours of 11:00 a.m. to 2:00 p.m.

19. Later that same day, Lee sent a follow up email to Vagelatos where she reiterated that she needed to take her lunch break at 2:00 p.m. for religious reasons, and she asked if such was permissible. Vagelatos never responded to Lee's email.

20. On or around June 25, 2018, Lee went to Vagelatos' office to discuss her lunch break because he never responded her email. Lee again asked Vagelatos

if she can take her lunch break at 2:00 p.m. for religious reasons. Vagelatos diverted his eyes when Lee brought up her religious needs and he again informed her that there is a Labor Department mandated lunch period of 11:00 a.m. to 2:00 p.m.. However, Vagelatos said that she is free to go lunch.

21. Since June 22, 2018, the day that Lee first discussed her religious beliefs with Vagelatos and requested an accommodation to take lunch at 2:00 p.m., Vagelatos no longer responded to Lee's emails or requests for information; he cancelled and refused daily scheduled meetings and briefings with Lee despite the fact that Vagelatos had previously stated that such meetings were required. Thus, it was obvious to Lee that she was being treated differently from other employees.

22. Then on or around August 8, 2018, Vagelatos summoned Lee to his office and in the presence of Wright-Parra he terminated Lee's employment under a pretext of poor performance and ordered her to leave the premises.

23. While retrieving her personal possession and without reason other than to instill fear in Lee, Vagelatos sought to paint Lee as a criminal by falsely excusing her of stealing NYU documents. Vagelatos then instructed Wright-Parra to call NYU's security for no other reason but to detain Lee.

24. Lee rejected this patently false accusation of theft and immediately proceeded to leave the office suites by way of the elevator. To Lee's surprise, when she arrived downstairs, she was accosted by Vagelatos who apparently ran

down the stairs ahead of Lee. There, without her permission and as she was about to exit the stairwell, Vagelatos reached across and blocked the stairwell with both arms in an attempt to physically detain or otherwise imprison Lee.

25. Lee proceeded to force her way past Vagelatos and Wright-Parra to fully exit the building while being pursued Wright-Parr and an NYU security guard. The security guard proceeded grabbed Lee, however, she was able to push his hands away as she demanded that he remove his hands from her person and to step-aside.

26. While on the street and Vagelatos' direction, Wright-Parra and several NYU security guards maintained their pursuit of Lee while shout her name in the street as would an unruly mob.

27. Fortunately for Lee she was finally able to break free from being detained by NYU but unfortunately this caused her public embarrassment and humiliation.

28. Thus, Lee alleges here that actions of NYU through Vagelatos in termination her employment was unlawful because of her religious practices and his actions in making a false allegation of theft was a pretext to cover his unlawful discriminatory actions toward Lee.

## COUNT - I
### Title VII: Termination of Employment
### Because of Religious Practices

29. Lee repeats and realleges every factual allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

30. At all relevant times NYU acted with the deliberate purpose of denying Lee's right to practice the tenets of her religion as alleged throughout this Complaint.

31. As a result, NYU's unlawful conduct, Lee has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, costs and attorneys' fees. Lee is entitled to recover damages for such injuries from NYU under Title VII and its supporting laws.

## COUNT - II
### State Human Rights Law: Termination of Employment
### Because of Religious Practices

32. Lee repeats and realleges every factual allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

33. At all relevant times NYU as an "employer" and Lee was an

"employee" within the meaning of the State Human Rights Law.

34. NYU's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination based on her religion as outlawed under the State Human Rights Law.

35. As a result NYU's unlawful conduct, Lee has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, attorneys' fees and costs as allowed under the State Human Rights Law.

36. As a further result of NYU's unlawful conduct, Lee has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain and suffering, inconvenience, impending loss of her residence, loss of enjoyment of life, and lasting embarrassment and humiliation. Lee is entitled to recover damages for such injuries from NYU under the State Human Rights Law.

### COUNT - III
### *City Human Rights Law: Termination of Employment Because of Religious Practices*

37. Lee repeats and realleges every factual allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

38. At all relevant times NYU as an "employer" and Lee was an "employee" within the meaning of the City Human Rights Law.

39. NYU's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination based on her religion as outlawed under the City Human Rights Law.

40. As a result of NYU's unlawful conduct, Lee has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, costs and attorneys' fees. Lee is entitled to recover damages for such injuries from NYU under the City Human Rights Law.

## COUNT - IV
### *Nicholas Vagelatos:  State Human Rights Law:*
### *Aider and Abettor*

41. Lee repeats and realleges every factual allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

42. At all relevant times NYU was an "employer" and Lee was an "employee" and Vagelatos was Lee' supervisor.

43. At all relevant times Vagelatos knew or should have known that his conduct in aiding NYU's discriminatory practices and his conduct directed toward

Lee was a violation of the State Human Rights Law.

44. At all relevant times Vagelatos knew or should have known that his conduct in aiding NYU's discriminatory conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination in his conduct toward Lee and terminating her employment because of her religious practices was a violation of the State Human Rights Law.

45. As a result of Vagelatos aiding and abetting NYU's unlawful conduct, Lee has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

46. As a result of Vagelatos' unlawful conduct, Lee is entitled to recover damages as alleged in this Complaint including, compensatory damages and attorney's fees, costs and punitive damages from Vagelatos pursuant to the State Human Rights Law.

### COUNT - V
### *Nicholas Vagelatos:  City Human Rights Law:*
### *Aider and Abettor*

47. Lee repeats and realleges every factual allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

48. At all relevant times NYU was an "employer" and Lee was an "employee" and Vagelatos was Lee' supervisor.

49. At all relevant times Vagelatos knew or should have known that his conduct in aiding NYU's discriminatory practices and his conduct directed toward Lee was a violation of the City Human Rights Law.

50. At all relevant times Vagelatos knew or should have known that his conduct in aiding NYU's discriminatory conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination in his conduct toward Lee and terminating her employment because of her religious practices was a violation of the City Human Rights Law.

51. As a result of Vagelatos aiding and abetting NYU's unlawful conduct, Lee has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

52. As a result of Vagelatos' unlawful conduct, Lee has is entitled to recover damages as alleged in this Complaint including, compensatory damages and attorney's fees, costs and punitive damages from Vagelatos pursuant to the City Human Rights Law.

## COUNT - VI
### *Nicholas Vagelatos: Assault Under New York Common Law*

53. Lee repeats and realleges every factual allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

54. At all relevant times as alleged for this cause of action, Vagelatos intentionally placed Lee in the apprehension of immediate harmful and offensive touching and fear for her physical well-being and safety.

55. At all relevant times as alleged for this cause of action, Vagelatos knew or should have known that his conduct his conduct directed toward Lee was unlawful.

56. As a result of Vagelatos unlawful conduct toward Lee, she has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

57. As a result of Vagelatos' unlawful conduct, Lee is entitled to recover damages as alleged in this Complaint including, compensatory damages and attorney's fees, costs and punitive damages from Vagelatos pursuant to the common law of the State of New York.

## **PRAYER FOR RELIEF COMMON TO ALL COUNTS**

WHEREFORE, Lee demands judgment as follows and for the Court to grant further relief as may be necessary and proper as follows:

(a) enter a judgment declaring the acts and/or practices of NYU to be in violation of the above described laws against unlawful discrimination in the workplace;

(b) award Lee as against NYU, loss wages, including without limitation back-pay, bonuses, pension and retirement benefits as a result of NYU's acts of unlawful workplace discrimination;

(c) award Lee as against NYU, consequential damages for losses resulting from NYU's unlawful acts of workplace discrimination;

(d) award Lee as against NYU, compensatory damages for among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the above described laws against workplace discrimination;

(e) award Lee as against NYU, punitive damages; and

(f) award Lee as against NYU, the cost of this action together with attorneys' fees in accordance with the above described laws against workplace discrimination.

(g) award Lee as against Vagelatos, compensatory damages for among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the above described laws against workplace discrimination;

(h) award Lee as against Vagelatos, punitive damages; and

(i) award Lee as against Vagelatos, the cost of this action together with attorneys' fees in accordance with the above described laws as an aider and abettor in workplace discrimination and under New York Common Law for assault.

## JURY DEMAND

Lee demands a jury trial for all issues triable by jury.

October 15, 2019  
New York, New York

Respectfully submitted,

LAW OFFICE OF
LOCKSLEY O. WADE, LLC
11 Broadway, Suite 615
New York, NY 10004
(212) 933-9180
(212) 933-9181 Fax

By: /s/ *Locksley O. Wade*
Locksley O. Wade, Esq.
*Attorney for Plaintiff*